**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class KELLY J. SCHMIDT**
**United States Air Force**

**ACM 38583**

**17 June 2015**

Sentence adjudged 3 October 2013 by GCM convened at Minot Air Force Base, North Dakota.  Military Judge:  William C. Muldoon, Jr.

Approved Sentence:  Dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Christopher D. James and Major Anthony D. Ortiz.

Appellate Counsel for the United States:  Major Daniel J. Breen; Major Roberto Ramírez; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

WEBER, Judge:

A panel of officer and enlisted members at a general court-martial convicted the appellant, contrary to his pleas, of one specification of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920.  The members sentenced the appellant to a dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1.  The convening authority approved the sentence as adjudged.

The appellant alleges, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.A.A.F. 1982), that the military judge erred by denying (1) the appellant's motion to suppress his post-polygraph statement to investigators, and (2) the appellant's motion to dismiss the charges for unlawful command influence. We disagree and affirm.

*Background*

The appellant met SL, a 16-year-old girl, through a couple that was friends of the two. SL regularly spent time and slept over at the couple's house. Before the night of the charged misconduct, SL had limited interaction with the appellant, although the appellant did make comments to SL that he wanted to have sexual intercourse with her.

On the night of the charged misconduct, the appellant, SL, and the mutual friends settled in for a night of watching movies at the friends' house. The appellant alone consumed alcohol. SL and the appellant were not sitting together. During the night, the couple lay down on an air mattress and went to sleep, leaving SL and the appellant on the couch. SL had recently taken some prescription medications that made her tired. The appellant moved over to SL's end of the couch and tried to kiss her. She pushed him away. At that point, SL promptly fell asleep, presumably due to the effects of the medication. Undeterred, the appellant proceeded to commit sexual acts upon SL while she slept.

The appellant's misconduct was discovered weeks later, when he told the mutual friends about his actions. After a series of events that led to suspicion that the appellant might have possessed one or more sexually explicit images of minors, an investigation ensued into the appellant's actions toward SL.[1] The appellant initially denied to investigators that he committed sexual acts upon SL. Later, he admitted to the activities but claimed they were consensual. The appellant agreed to submit to a polygraph, and after an investigator informed the appellant that the test indicated deception, the appellant confessed that he realized SL was asleep early in the progression of the sexual acts.

*Voluntariness of Confession*

At trial, the appellant moved to suppress his post-polygraph statement, asserting that the statement was an involuntary product of psychological coercion by investigators. He cited the length of his initial interview, plus statements by investigators that the timing of the allegation was bad and that the alleged victim might embellish her allegation if he did not confess. The military judge denied the appellant's motion in a detailed written ruling supported by ample findings of fact and conclusions of law. The appellant now challenges the military judge's ruling, citing the same matters raised at trial.

---

[1] The appellant was initially charged with possessing child pornography, but this matter was not referred to trial.

"We review a military judge's ruling on a motion to suppress . . . for an abuse of discretion." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995), as quoted in *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014). Under this standard, we review whether the military judge's findings of fact are clearly erroneous and whether his or her conclusions of law are correct. *Id.*

"[A]n involuntary statement or any derivative evidence therefrom may not be received in evidence against an accused who made the statement." Mil. R. Evid. 304(a). "A statement is 'involuntary' if it is obtained in violation of the self-incrimination privilege or due process clause of the Fifth Amendment to the Constitution of the United States, Article 31, [UCMJ,] or through the use of coercion, unlawful influence, or unlawful inducement." Mil. R. Evid. 304(c)(3). The ultimate test remains the test of voluntariness:

> Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). This test requires an assessment of "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The totality of the circumstances includes factors such as the age, education, and intelligence of the accused; whether the accused was advised of his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep. *Id.*

The military judge issued extensive and well-supported findings of fact that thoroughly support his conclusion that the appellant's post-polygraph confession was voluntary. The military judge found, among other matters, that the appellant was provided with sufficient breaks; he was offered food and water; the appellant did not indicate any kind of pain, discomfort, or distress on the video of the questioning; and the appellant voluntarily submitted to the polygraph. Our review of the videotaped polygraph and subsequent interrogation also indicates no threatening or overly coercive behavior by the investigator. The appellant cites *United States v. Martinez*, 38 M.J. 82 (C.M.A. 1993), to support his contention that his will was overborn. However, factors that led to a finding of involuntariness in *Martinez*—such as the duration of the interrogation, the nature of the interrogation techniques, and the accused's frustrated attempts to obtain assistance of counsel during the investigation—do not weigh in his favor in the instant case. *See United States v. Martinez*, 38 M.J. 82, 86 (C.M.A. 1993).

Considering the totality of the circumstances, we conclude the appellant's confession was voluntary, and the military judge did not err in declining to suppress the confession.

*Unlawful Command Influence*

Also at trial, the appellant moved to dismiss the charges based on unlawful command influence. His motion did not focus on any wrongdoing in this case; rather, it broadly cited comments and actions from military and political leaders regarding sexual assault allegations in the military. The appellant asserted that he faced "a court-martial, and allegations, in which everyone involved on the government side, and the court members, know[s] the civilian and military authorities over them, all the way to the top, desire a conviction for the good of the Air Force and the military." (Emphasis in original). His assignment of error on this issue essentially cites his motion at trial.

"Where the issue of unlawful command influence is litigated on the record, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that this Court reviews *de novo*." *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994).

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." However, "[t]he term 'unlawful command influence' has been used broadly . . . to cover a multitude of situations in which superiors have unlawfully controlled the actions of subordinates in the exercise of their duties under the UCMJ." *United States v. Hamilton*, 41 M.J. 32, 36 (C.M.A. 1994) (citing *United States v. Hawthorne*, 22 C.M.R. 83 (C.M.A. 1956)). Generally, unlawful command influence consists of two types: accusatory (preferral, forwarding, and referral of charges) and adjudicative (interference with witnesses, judges, members, and counsel). *United States v. Drayton*, 39 M.J. 871, 874 (A.C.M.R. 1994).

At trial, the burden of raising the issue of unlawful command influence rests with trial defense counsel. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The defense must: (1) "show facts which, if true, constitute unlawful command influence," and (2) show "the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *Id.* To meet the threshold for raising this issue, trial defense is required to present "some evidence" of unlawful command influence. *Id.* If the defense meets that burden to raise the issue, the burden shifts to the government, which must:

> (1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful

command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings. Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt.

*United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003) (internal quotation marks and citation omitted).

The military judge heard evidence and argument on the defense's broad unlawful command influence motion. He issued extensive findings of fact and thoroughly analyzed this issue, denying the defense's motion. He found that the comments and actions the defense cited largely represented legitimate exercises of those officials' right to oversee the actions of the military. The military judge analyzed the defense motion for both apparent and actual unlawful command influence, and covered each relevant stage of the court-martial process. He allowed wide latitude in questioning potential members about their knowledge of any comments by political or senior government officials concerning sexual assault in the military, and indicated he would liberally grant challenges for cause on this issue. However, the defense did not challenge a single member based on this issue. We find no abuse of discretion in the military judge's thorough, well-reasoned ruling. We see no reason to believe unlawful command influence impacted the appellant's court-martial.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are

**AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court